UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRADLEY L. ROBBINS,                         )
                                            )
            Plaintiff,                      )
                                            )
                                            )
v.                                          )        No. 3:08-CV-189
                                            )        (PHILLIPS/GUYTON)
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum

in Support  [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum

in Support [Docs. 15 and 16].  Plaintiff Bradley L. Robbins seeks judicial review of the decision of

the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue,

Commissioner of Social Security ("the Commissioner").

On December 13, 2004, the Plaintiff filed an application for Supplemental Security Income

payments, claiming disability as of April 15, 1999, [Tr. 16].  After his application was denied

initially and also denied upon reconsideration, Plaintiff requested a hearing.  On December 27, 2005,

a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 16].  On October

2, 2007, the ALJ found that Plaintiff was not disabled. [Tr. 23].  The Appeals Council denied the

Plaintiff's request for review; thus the decision of the ALJ became the final decision of the

Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.   ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).

6. The claimant retains the residual functional capacity to perform the full range of medium work.

7. The claimant has no past relevant work. (20 CFR § 416.965).

8. The claimant is currently "closely approaching advanced age." At the time of his alleged onset date the claimant was a "younger individual" (20 CFR § 416.963).

9. The claimant has 'a high school (or high school equivalent) education' (20 CFR § 416.964).

10. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by the Medical-Vocational Rules 203.21 and 203.28.

11. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20

2

CFR § 416.920(f)).

[Tr. 22-23].

## II.    DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age,

blindness, or disability.  See 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual

shall be determined to be under a disability only if his physical or mental impairment or impairments

are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he

applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

4

## IV.   ANALYSIS

On appeal, the Plaintiff argues that substantial evidence does not support the ALJ's disability determination. The Plaintiff contends the ALJ erred by: (A) finding that the Plaintiff could perform the full range of medium work and (B) discounting the Plaintiff's nonexertional limitations, such as his mental health impairments. [Doc. 14]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 16].

### A.   The Residual Functional Capacity Determination

The Plaintiff argues that the ALJ erred in his residual functional capacity ("RFC") determination because "[i]t is unlikely that an individual with diabetic neuropathy in both the upper and lower extremities could perform the lifting, standing, or walking required to perform light or medium work activity." [Doc. 14 at 7]. The Commissioner contends that the RFC determination was supported by substantial evidence including the opinions of numerous consulting physicians. [Doc. 16 at 10-12]. The Commissioner also maintains that the ALJ correctly found the Plaintiff's statements about his symptoms and impairments to be less than credible. [Doc. 16 at 10].

The ALJ explained his RFC determination as follows:

> In assessing residual functional capacity, the Administrative Law Judge has considered the claimant's subjective allegations. The objective evidence fails to document an impairment or combination of impairments of such severity as would preclude work in the medium range of exertion. The undersigned finds it reasonable to conclude that the claimant's obesity and history of polyneuropathy limit him to performing the demands of medium exertion. However, current treatment notes make no not of findings related to neuropathy. The record as a whole does not support further work-related limitations such as avoidance of concentrated exposure to extreme cold, heat, or wetness. The claimant has good use of his upper and lower extremities. . . . The claimant's hypothyroidism is controlled with medication. . . . The undersigned finds it reasonable to conclude that the claimant's diabetes and neuropathy would improve with

5

significant weight loss as recommended by his physician. Significant adverse side-effects of medications are not indicated in the treatment record. No treating physician has indicated that the claimant is totally disabled due to pain. The claimant has not required aggressive treatment for pain. He has not been referred for pain management nor has he required hospitalization due to pain. Though the claimant has described limited daily activities, it appears that any limitations in the claimant's activities at the medium level of exertion are primarily voluntary in nature as no physician has restricted the claimant's activities as he describes.

[Tr. 20-21].

The ALJ further explained that several factors supported discounting the Plaintiff's credibility. These factors included the Plaintiff's inconsistent explanation for why he left his last job and the Plaintiff's failure to cooperate during his consultative examinations. [Tr. 21]. The ALJ noted that the Plaintiff failed to heed persistent advice from physicians that he lose weight. [Tr. 21]. Based upon this credibility determination and analysis of the Plaintiff's RFC, the ALJ determined that the Plaintiff's allegations of disabling pain and other physical symptoms were not supported by the evidence in the record. [Tr. 21].

The Plaintiff argues that the findings of George L. Day, M.D., ("Dr. Day") and Thomas F. Stout, M.D., ("Dr. Stout") undermine the ALJ's RFC determination. The ALJ examined the records of both Dr. Day and Dr. Stout and found:

> A review of [the 1998 records from Dr. Day and Dr. Stout] reveals that the claimant was diagnosed with non-insulin dependent diabetes in the early 1990's and subsequently developed nerve pain and numbness in his extremities. He was diagnosed with Achilles reflexes, and subjective sensation deficits effecting [sic] the stocking and glove type of distributions in the upper and lower extremities.

[Tr. 18]. Turning to records of treatment by Dr. Day after the alleged onset date, the ALJ explained:

> Records from George L. Day, M.D., primary care physician, document treatment from March 5, 1999 through March 14, 2005.

6

> During this period, the claimant complained on one occasion, March 14, 2005, that his diabetes was not controlled and that he was having problems with neuropathy in his feet. Other than the claimant's morbid obesity (300 pounds), physical examinations during the entire period were entirely within the normal limits. Dr. Day encouraged the claimant to lose weight but indicated at all times that he did not appear in acute distress (Exhibit B-5F).

[Tr. 18].

Only the records from Dr. Day fall within the alleged period of disability. The ALJ considered these records and correctly found that the Plaintiff only complained of neuropathy on a single occasion. [Tr. 140]. As the ALJ pointed out, the Plaintiff presented as significantly overweight at all of his visits with Dr. Day, but the Plaintiff's physical examinations were within normal limits. The ALJ's determination that the Plaintiff retained the RFC to perform medium work is not inconsistent with the records from his visits with Dr. Day.

Further, the ALJ considered numerous consultative opinions, which supported his finding that the Plaintiff could perform medium work. For example, consulting examiner, Wayne Page, M.D., ("Dr. Page"), found after a physical examination on August 15, 2005, that the Plaintiff's gait and station were normal and that the Plaintiff did not use an assistive device. [Tr. 244]. The Plaintiff was mobile, demonstrated a normal ability to grasp and manipulate objects, and got up from a chair and onto the examination table without difficulty. [Tr. 244-46]. Dr. Page found that the peripheral neuropathy, secondary to his diabetes, but found that this condition only necessitated that the Plaintiff avoid temperature extremes and foot trauma. [Tr. 247]. Dr. Page found that the Plaintiff was still able to stand or walk for six hours in an eight hour day and could frequently lift and carry items. [Tr. 246].

A second consultative examination was conducted by Joe G. Allison, M.D., ("Dr. Allison"), a state agency physician, on August 24, 2005. Dr. Allison found that the Plaintiff responded

inconsistently during sensation testing and found no physical evidence to explain the degree of pain which the Plaintiff complained of. [Tr. 250]. Dr. Allison found no postural limitations, manipulative limitations, or exertional limitations had been established. [Tr. 249-50].

Finally, the ALJ ordered x-rays of the Plaintiff's left knee, after the hearing. These x-rays also failed to demonstrate any defects or exertional limitations. [Tr. 291-92].

Based on the foregoing, the Court finds that the ALJ's determination that the Plaintiff retained the RFC to complete medium work is consistent with the records of treatment from Dr. Day and the opinions of consulting examiners. Dr. Day, Dr. Page, and Dr. Allison all considered the Plaintiff's obesity and complaints about neuropathy, to the extent complaints were made, and found that the Plaintiff had no exertional limitations beyond those in the ALJ's RFC determination. Accordingly, the Court finds that the RFC determination is supported by substantial evidence.

**B.     Nonexertional Impairments**

The Plaintiff also alleges that the ALJ erred by finding that the Plaintiff's did not have mental

health impairments that would affect his RFC. [Doc. 14 at 9]. However, the Plaintiff cites no evidence in the record to support his position. The Commissioner contends that the ALJ's mental health analysis and determination are supported by substantial evidence. [Doc. 16 at 13].

A number of mental health examinations were conducted to determine the extent and effects of any mental health impairments the Plaintiff might have. Plaintiff was examined on July 6, 2007, by Alice Garland, M.S., ("Ms. Garland"). The Plaintiff reported depression but stated that he only saw a psychiatrist for the condition for a brief period and currently only sought occasional treatment from his family physician. [Tr. 223]. The Plaintiff made little or no attempt at the tests that were administered to him, and as a result, Ms. Garland felt it was appropriate to defer diagnosis. [Tr. 225-

8

26]. In a subsequent evaluation, Roy Nevils, Ph.D., ("Dr. Nevils"), found it "impossible to make many judgments about the mental status evaluation, due to his lack of attempt." [Tr. 259]. However, Dr. Nevils noted that there were no obvious disturbances in the Plaintiff's memory or concentration and assigned the Plaintiff a Global Assessment of Functioning score of 65. [Tr. 259].

Finally, in a mental RFC assessment conducted on November 10, 2005, Ronald Kourany, M.D., ("Dr. Kourany") found that the Plaintiff would, "be able to complete simple and low level detailed tasks and sustain persistence on repetitive, routine, activities requiring limited contacts with the public;" would "accept supportive criticism from supervisors and coworkers;" and would "need some assistance setting realistic goals," but could "still do so adequately." [Tr. 276]. The ALJ considered these findings, but also discounted Dr. Kourany's findings of certain moderate restrictions on functioning after determining that they were not consistent with the other evidence in the record.

In addition to considering these consultative examinations, the ALJ considered records of treatment from Dr. Day, and found that these records indicated a "normal mental health status." [Tr. 20].

The ALJ properly considered the foregoing evidence regarding the Plaintiff's mental impairment and found that the Plaintiff's refusal to cooperate in numerous evaluations and the Plaintiff's normal mental health records and high GAF score indicated that the Plaintiff did not have a severe mental health impairment. Thus, the ALJ found that the mental health impairment was not a nonexertional limitation which would affect his decision-making under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. The Court finds that the foregoing records and examinations comprise more than substantial evidence in support of the ALJ's mental health determination, and the Plaintiff has not cited the Court to any evidence which would contradict or

9

undermine this evidence.  Accordingly, the Court finds that the ALJ's determination is supported

by substantial evidence.

## V.    CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to

determine Plaintiff is capable of performing medium work.  Substantial evidence supports the ALJ's

findings and conclusions.  Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For

Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary

Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be served and filed within ten
(10) days after service of a copy of this recommended disposition on the objecting party.  Fed. R.
Crim. P. 59(b)(2).  Failure to file objections within the time specified waives the right to review
by the District Court.  Fed. R. Crim. P. 59(b)(2); see  United States v. Branch, 537 F.3d 582, 587
(6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file
objections in compliance with the ten-day time period waives the right to appeal the District
Court's order).  The District Court need not provide de novo review where objections to this
report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d
636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v.
Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

Case 3:08-cv-00189-TWP-HBG   Document 17   Filed 04/14/09   Page 10 of 10   PageID #: 76